UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                                                    Case No.  5:04-cr-37-Oc-10GRJ

WESTLY BRIAN CANI

_____

### REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant's Motion To Suppress Evidence (Doc. 56) to which the Government has filed a Response In Opposition. (Doc. 75.) On April 29, 2005 the Court conducted an evidentiary hearing. For the reasons that follow, it is respectfully **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 56) be **DENIED**.

### I. INTRODUCTION

The Defendant is an inmate at FCC-Coleman charged with conspiracy to distribute and to possess with intent to distribute heroin, distribution of heroin, obtaining a prohibited object (i.e. heroin) by a federal inmate and providing a prohibited object (i.e. heroin) to a federal inmate.

The Motion to Suppress currently before the Court requests that the Court suppress two incriminating statements, one made by Defendant on May 24, 2004 and the other made by Defendant on September 29, 2004 incident to a urinalysis conducted

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

by the BOP. According to Defendant, the statements should be suppressed because they were involuntary statements made under duress.

## II. EVIDENCE AND TESTIMONY

Although, Defendant has requested that both the May 24, 2004 and September 29, 2004 statements should be suppressed, there was not much, if any, of an evidentiary challenge made at the hearing to the September 29, 2004 statement. Therefore, the Court will address first the May 24, 2004 statement and then briefly the circumstances surrounding the September 29, 2004 statement.

### A. May 24, 2004 Statements Made To The F.B.I.

On this issue the Government presented the testimony of F.B.I. Special Agent James M. Raby, Jr. Agent Raby testified that he had been investigating allegations of distribution of drugs, including heroin, within the United States Penitentiary at Coleman-FCC ("FCC-Coleman") since approximately April 2003. One of the more than 50 inmates that were being investigated was Westly Cani, the defendant in this case.

Defendant had been placed in the Special Housing Unit ("SHU") in mid-January 2004 as a result of a positive test for heroin. Although the Defendant was scheduled to be released from the SHU on or around February 25, 2004 he was not released because the F.B.I. had requested the BOP to place a "hold" on the inmates involved in the investigation pending completion of the investigation. According to Agent Raby, placing a hold on inmates, who were being investigated, is a standard practice of the F.B.I. during the course of an investigation of inmates at FCC-Coleman.

On May 24, 2004, as part of the investigation, the Defendant was interviewed by Agent Raby at the prison in a separate room located in the SHU. Agent Raby was

accompanied by Officer Felix Barrios, an intelligence officer employed by the BOP. At the inception of the interview Agent Raby confronted the Defendant with evidence the F.B.I. had obtained against the Defendant, including consensual recordings of the Defendant discussing drug distribution with a cooperating inmate. The Defendant was asked whether he was willing to talk about the evidence Agent Raby had collected. The Defendant advised Agent Raby that he would do so because he was anxious to get out of the SHU. Agent Raby expressly advised the Defendant that before he could ask any questions he was required to advise the Defendant of his rights.

According to Agent Raby, he then read the Defendant his *Miranda* rights from a pre-printed form issued by the F.B.I. Before proceeding with the questioning, Agent Raby presented the Defendant with a form containing the *Miranda* warnings, entitled "Advice of Rights," which the Defendant read and then signed in the presence of Agent Raby and Officer Barrios, both of whom witnessed the Defendant's signature.[2]

The Defendant was then interviewed by Agent Raby with regard to Defendant's involvement with the distribution of heroin at the prison. At the conclusion of the interview - which lasted about one hour - Agent Raby advised the Defendant that there were two choices for memorializing the statements made by the Defendant. Agent Raby would either write a report of the statements made by Defendant based on Agent Raby's notes or the Defendant could write a statement himself and sign it. The Defendant elected to write his own statement.

---

[2] Government Exhibit "1".

Agent Raby generally instructed the Defendant as to the format of the statement including instructing the Defendant to begin with a preamble disclosing his education, date of birth, that the Defendant was not under the influence of drugs or medication and that the statement was voluntary. The Defendant then wrote the statement in his own words describing the Defendant's involvement with heroin at FCC-Coleman since 2002. In the written statement the Defendant stated that he "possessed heroin and did what [he had to] to obtain it." Further, the Defendant stated that he "would occassionally [sic] give some [the heroin] to friends." The Defendant signed the statement at the end after writing "I have read this two page statement, have initialed all corrections, and am signing it because it is true & correct."[3]

According to Agent Raby, the Defendant asked him how long the Defendant would remain in the SHU. Agent Raby advised the Defendant that the ultimate decision to transfer the Defendant from the SHU back into the general population at the prison was the responsibility of the BOP. However, Agent Raby told the Defendant that the F.B.I. had placed a hold on the Defendant, as well as other inmates targeted in the investigation, and that Agent Raby was going to release the hold shortly. The Defendant, as well as the other inmates being investigated, were transferred from the SHU to the general prison population shortly thereafter. Lastly, Agent Raby testified that during the questioning he did not raise his voice, threaten or intimidate the Defendant verbally or physically. Although the Defendant was handcuffed during the interview - which is BOP policy - Agent Raby instructed the correctional officers to move the

---

[3] Government Exhibit "2".

handcuffs from behind the Defendant to the front so that the Defendant was more comfortable.

The Defendant also testified at the hearing. Defendant testified that Officer Barrios told the Defendant that if the Defendant did not cooperate he would be in the SHU for a long time. Agent Raby in contrast testified that Officer Barrios was never alone in the room with the Defendant and that neither he nor Officer Barrios threatened Defendant that if he did not cooperate he would be in the SHU for a long time. The Defendant testified that an officer named "McClain" escorted him from the cell in the SHU to the interview room where he met Officer Barrios and Agent Raby, thus confirming that Officer Barrios was never alone with the Defendant.

Defendant also testified at length concerning his personal situation during this time period. The Defendant's wife had recently passed away and as a result the State of Florida had initiated legal proceedings to transfer custody of the Defendant's children. The Defendant had filed a lawsuit against the BOP in an effort to obtain authorization to attend the custody proceedings involving his children which was pending in South Florida. In addition, the Defendant testified that he is a drug addict and despite making requests to the BOP he had not received drug treatment.

The Defendant also described the details of the conditions of confinement in the SHU. During his confinement in the SHU the Defendant was confined in his cell for 23 hours per day and did not make any phone calls or have any visitors. Because of these conditions the Defendant suggests that the statement he gave was not voluntary and was made under coercive conditions. Defendant did concede, however, during cross examination, that Agent Raby never mentioned the custody proceedings during the

interview nor the lawsuit the Defendant had filed against the BOP. Further, Defendant conceded that neither Agent Raby nor Officer Barrios raised their voices or physically threatened the Defendant during the interview.

B.  **September 29, 2004 Statement Incident To Urinalysis**

The United States also presented the testimony of Lieutenant Vince Soto, a correctional officer at FCC-Coleman, who was an intelligence officer at the BOP on September 29, 2004 in charge of the random urinalysis testing program at FCC-Coleman.

The BOP conducts random urinalysis testing of inmates on a routine basis. These random drug tests are administered to approximately ten percent of the prison population. A list of the selected inmates is received from the BOP regional office in Atlanta. The officials at FCC-Coleman have no involvement in the selection of the inmates to be tested.  On September 29, 2004 the Defendant was on the list and was removed from the general population with about 25 other inmates and taken to the rest rooms near the visitors area for the collection of a urine specimen.

According to Officer Soto, when the Defendant provided his urine sample he appeared to be nervous and appeared to be manipulating something in his clothing while he was providing the specimen. Officer Soto tested the specimen provided by the Defendant which disclosed the specimen was clear - like water - and was not a consistent temperature with recently expelled urine. Defendant was then confronted by Office Soto and asked to submit to a strip search. As the Defendant was disrobing he handed a small bottle of water to Officer Soto and stated that he "was dirty," meaning he had recently used drugs. Officer Soto noticed fresh needle marks on the Defendant's

arm and asked the Defendant what drug he had used. The Defendant advised Officer Soto that he had used heroin. The Defendant then provided a true urine specimen which was tested and revealed a positive reading for heroin. All of this occurred in the restroom and no further questions were asked concerning the distribution of heroin within the prison.

### III. DISCUSSION

With regard to the oral and written statements made by Defendant to Agent Raby on May 24, 2004, the Defendant's sole argument is that because the statements were made while the Defendant was confined in the SHU - and the BOP officer told him he would stay in the SHU for a long time if he did not cooperate - the statements were not voluntary and were coerced from the Defendant. Defendant argues that even though he was provided with *Miranda* warnings prior to questioning - and signed a form expressly advising him of his constitutional rights - he was under duress at the time the statements were made, thus, rendering the statements involuntary.

To determine whether a confession is voluntary, the court must assess "the totality of all the surrounding circumstances."[4]  Under the totality of the circumstances test the Court must examine whether the "statement was the product of 'an essentially free and unconstrained choice."[5] "Among the factors" the Court will "consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by

---

[4] United States v. Ballard, 586 F.2d 1060, 1062 (5th Cir. 1978).

[5] United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

police."[6] In order for the conduct of law enforcement to be deemed so coercive that a statement is rendered involuntary, the questioning normally would involve "subjecting the accused to an exhaustively long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."[7]

The totality of the circumstances involved in the instant case suggest few, if any, facts that support the Defendant's argument that the statements were made by him as a result of coercive conduct on the part of law enforcement.

The statements were made by Defendant only after having been given *Miranda* warnings. Notably, the *Miranda* warnings were provided to the Defendant in a separate document which he read, acknowledged and signed before two witnesses. The suggestion that the statement was not voluntary is at odds with the Defendant's express representation in the written statement - prepared and written by him - that the statement was made "free and voluntary." The Defendant is of above average intelligence and indeed testified that he regularly prepares petitions and other legal papers for other inmates. The Defendant never suggested that the questioning by Agent Raby was accompanied by threats of physical force, yelling, shouting or any other aggressive conduct on the part of law enforcement. The questioning lasted only about one hour and was conducted at nine o'clock in the morning, presumably while the Defendant was rested and alert.   Agent Raby never threatened physical punishment,

---

[6] Hubbard v. Haley, 317 F.3d 1245, 1253 (11th Cir. 2003)(*citing* Schenckloth v. Bustamante, 412 U.S. 218, 226 (1973)).

[7] United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.)(*quoting* Miller v. Dugger, 838 F.2d 1530, 1536 (11th Cir. 1988)), *cert denied*, 113 S.Ct. 436 (1992).

such as deprivation of food or sleep, during the questioning. Lastly, the questioning was neither repeated nor prolonged.

The only evidence the Defendant points to in arguing that the statements were not voluntary is the alleged statement made by Office Barrios that the Defendant would be in the SHU for a long time if he did not cooperate. Defendant argues that this statement in conjunction with his then present emotional state makes any statement he gave to Agent Raby involuntary. Based on a review of the totality of the evidence presented at the hearing the Court concludes that Defendant's argument is insufficient to meet the heavy burden of showing that his statement was involuntary.

First, the only evidence that Officer Barrios had made such a statement was Defendant's own testimony. The Court finds this testimony not to be credible. Defendant testified that he was "pulled" from his cell by Officer McClain and brought to the interview room where he met with Officer Barrios and Agent Raby. Thus, the only possible opportunity for Officer Barrios to have made this statement was during the interview itself. Agent Raby expressly testified that Agent Raby was with Officer Barrios during the interview and that neither he nor Officer Barrios said or suggested that the Defendant would be in the SHU for a long time if the Defendant did not cooperate. To the contrary Agent Raby testified that he told Defendant the "hold" would be lifted and that he would be released from the SHU shortly.

Secondly, even assuming that Officer Barrios had made a statement to the Defendant that Defendant would be in the SHU for a long time, such a statement is insufficient to establish that the statement was involuntary. "Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative

9

defendants, are normally insufficient to preclude free choice."[8] Moreover, the Court is required to focus on the totality of the circumstances and not to focus on one isolated statement. While it is reasonable to understand that the Defendant was anxious to be returned to the general population at the prison, this fact - standing alone - is not sufficient to overcome the other circumstances surrounding the interview, including the length and tenor of the interview and Defendant's admission that he understood his rights prior to making any statement. To accept Defendant's view would render every statement made by an accused, who is in custody in a penal facility, *per se* involuntary. Such a view is inconsistent with the test requiring the Court to view the totality of the circumstances in determining the voluntariness of a statement and is not in line with other authorities, which have found more far reaching and compelling promises by law enforcement to be insufficient to overbear an accused's will and capacity for self determination.[9]

Accordingly, for these reasons the Court concludes that the statements made by the Defendant to Agent Raby on May 24, 2004 were made voluntarily and, therefore, the Defendant's motion to suppress these statements should be denied.

Turning briefly to the September 29, 2004 statement made to Office Soto, the Defendant failed to present any evidence that the statements were coerced. The statements were made during a random urinalysis of Defendant, with other inmates.

---

[8] *Id.*

[9] *See,* United States v. Lebrun, 363 F.3d 715, 726 (8th Cir. 2004)(*citing* Tippitt v. Lockhart, 859 F.2d 595, 598 (8th Cir. 1988))(" a promise to a defendant not to prosecute him for capital murder in exchange for a confession did not render the confession involuntary in light of other facts showing that the interrogation was brief and that the defendant possessed an eleventh grade education.").

There was nothing coercive about the conduct of Officer Soto nor was there any evidence presented that Officer Soto interrogated the Defendant. Rather, when Defendant was caught tampering with his urine specimen and the small bottle of water was handed over Officer Soto simply conducted on site questioning of the Defendant, as he was required to do. Solely because the Defendant was an inmate in a penal institution at the time does not make the questioning "custodial" for purposes of *Miranda*.[10]

Accordingly, because the questioning of Defendant did not take place as part of an interrogation but rather as part of the spontaneous on the scene questioning of Defendant regarding his adulterated urine specimen there is no reason to suppress Defendant's statement and to this extent his motion to suppress should be denied.

## IV. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. 56) be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on this 9th day of May, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record
  Defendant

---

[10] Garcia v. Singletary, 13 F. 3d 1487, 1490-91 (11th Cir. 1994)(court rejected defendant's contention that his statements in response to a prison guard's on the scene questioning concerning a fire in his cell should be suppressed.); *see also,* Cervantes v. Walker, 589 F.2d 424, 427 (9th Cir. 1978)("[i]n contrast to custodial interrogation, on the scene questioning [in a prison] does not require Miranda warnings ... Such questioning enables an officer 'to determine whether a crime has been committed or is in progress.'").